IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Yvette Flowers, | ) | Case No.: 2:19-cv-00254-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER & OPINION** |
| International Longshoremen's Association Local 1422; | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Mary Gordon Baker made in accordance with § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) of the District of South Carolina.[1] Yvette Flowers ("Plaintiff" or "Flowers"), an official for International Longshoremen's Association Local 1422 ("Defendant"), has filed a Complaint alleging (1) breach of contract; (2) breach of contract with fraudulent intent; (3) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); and (4) retaliation in violation of Title VII.[2] (DE 1, ¶ 7.) (DE 54, p. 2.) Plaintiff alleges *inter alia* she has been improperly denied a seniority classification and that this denial stems from the deliberate misinterpretation of Defendant's governing policy and procedures. Specifically, Plaintiff contends Defendant selectively enforced its policy

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

[2] Plaintiff has voluntarily withdrawn her claims for breach of contract and breach of contract with fraudulent intent; and therefore, this Court grants Defendant's motion to summary judgment on Plaintiff's breach of contract claims. (DE 54, p. 5.)

1

regarding permissible hours during which elected officials could work on the docks, creating an arbitrary limitation as to when Plaintiff could perform such work.[3]  Plaintiff alleges that this limitation was only given to her as opposed to her similarly situated male coworkers who were also Union officials, and that it negatively impacted her ability to accrue hours in order to gain seniority.  Additionally, in response to her Equal Employment Opportunity Commission (the "EEOC") claim filed against Defendant, Plaintiff contends that Defendant has retaliated against her.[4]  The Report addresses Defendant's motion for summary judgement pursuant to Rule 56, Fed. R. Civ. P.  The Report recommends granting Defendant's motion for summary judgment because Plaintiff has not shown she suffered an adverse employment action, and Plaintiff has provided no evidence that would allow the Court to infer a causal link between her protected activity and Defendant's alleged retaliatory acts.  Plaintiff filed her objections to the Report and Recommendation on July 12, 2021. (DE 56.)  For the following reasons, the Court disagrees with Plaintiff's objections and adopts the Report.

Although Plaintiff raises several objections, to be actionable, objections to the Report and Recommendation must be specific.  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is

---

[3]     Plaintiff serves as both an elected official and as a Financial Secretary-Treasurer for Defendant. (DE 52, p. 4.)  One of Defendant's governing policies provided that every local union must have a seniority system that requires a minimum of 700 work hours on the docks annually. (DE 1, ¶ 14.)  Defendant also had a policy providing:

> Local 1422 policy with respect to elected board officers working on the docks required that all elected board officers remain in the office during daytime hours: Full time elected officials may work on the docks after 5 p.m. Monday through Thursday, all day on Fridays and holidays, and on weekends. Full time officers are paid 40 hours per week for the performance of their jobs Monday through Friday from 9 a.m. to 5 p.m.

(DE 52, p. 10-11.)  This policy was to be amended to prohibit elected officers from working Fridays before 5 pm. (DE 52, p. 6.)

[4]     Plaintiff filed her EEOC Charge of Discrimination against Defendant on March 22, 2017, alleging discrimination on the basis of her sex and retaliation.  (DE 52, p. 7, 14.)

accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984).  "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- *that are at the heart of the parties' dispute*.'"  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985) (emphasis added)).   In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the Court finds that Plaintiff made the following specific objections to the Report contending that 1) "[g]enuine issues of material fact exist as to whether Plaintiff suffered an adverse employment action," 2) Defendant's reasons for its "discriminatory" implementation of its work policy for elected board officers constitute evidence of pretext, and 3) Plaintiff has establish causation through evidence of continued retaliatory animus.  The Court will discuss each *seriatim*.  First, as to Plaintiff's claim that genuine issues of material fact exist regarding whether she suffered an adverse employment action because she was not given the same opportunities to work the docks and reach 700 hours of work compared to her male comparators.  (DE 56, p. 3.) The Court finds this objection unconvincing.  Under Title VII, an adverse employment action is explicitly limited to those actions that affect employment or alter the conditions of the workplace. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 62 (2006).  In other words, an alleged discriminatory act must "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment."  Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation omitted). "Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, [and] reduced

opportunities for promotion.'" Cole v. Wake Cty. Bd. of Educ., 494 F. Supp. 3d 338, 345 (E.D.N.C. 2020), aff'd, 834 F. App'x 820 (4th Cir. 2021), cert. denied sub nom. Although it would be difficult to perform the required dock work while also working a 40-hour week, the record shows Plaintiff's male comparators who qualified for seniority status still would have qualified for such status if they had not worked any prohibited hours. (DE 54, p. 10.) Accordingly, Plaintiff has failed to address how her alleged inability to work on the docks during daytime hours prevented her from achieving the required hours for seniority status. Therefore, to the extent there are fact disputes concerning her opportunity to work during prohibited hours, these fact disputes are immaterial.[5] Thus, the Court finds this objection to be unfounded.

Next, Plaintiff objects to the Report's finding that Defendant's reasons for its "discriminatory" implementation of its work policy for elected board officers does not constitute evidence of pretext. (DE 56, p. 6.) As an initial matter, the Report finds that the Plaintiff has not established a prima facia case of discrimination or retaliation. (DE 54, p. 16.) Notwithstanding the lack of a prima facia case, the Report recommends that Defendant has a non-discriminatory reason for its policy regarding permissible hours during which elected officials could work on the docks and for the instances in which Defendant allowed exceptions to this policy. This Court agrees.

Nevertheless, the fallacy of Plaintiff's objection is it presumes Plaintiff met her prima facie burden, and the employer has *not* offered a nondiscriminatory reason for its actions. Rather, Plaintiff has not met her burden, and the Defendant has offered a nondiscriminatory reason for its actions. However, Plaintiff believes she should have the opportunity to show the reason is pretextual, notwithstanding binding authority to the contrary. See Mereish v. Walker, 359 F.3d

---

[5] Equally, the Court finds Plaintiff's objection regarding credibility determinations of Plaintiff's testimony unavailing because they do not involve genuine issues of material facts.

330, 336 (4th Cir. 2004) (After the burden shifts from the employer, a plaintiff can meet her burden of showing pretext by demonstrating that Defendant's nondiscriminatory "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of [] discrimination.")  However, since Plaintiff has not established a prima facie case of sex discrimination in violation of Title VII, this objection lack merit.

Lastly, Plaintiff objects to the Report contending her retaliation claim should not be dismissed because she can establish causation through evidence of continued retaliation. (DE 56, p. 7.)  The Report found that "Plaintiff cannot show the requisite causal link between her protected activity and Defendant's alleged adverse action" because "Plaintiff's only argument with respect to causation is that she filed her EEOC charge in 2017 and that Mr. Riley attempted to fire her in 2019." (DE 54, 14.)

"To establish a prima facie claim of retaliation, a plaintiff must show: (1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action." Perkins v. Int'l Paper Co., 936 F.3d 196, 213 (4th Cir. 2019).  A plaintiff may prove causation through temporal proximity or "evidence of recurring retaliatory animus during the intervening period" between the protected activity and allegedly retaliatory conduct. Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).  Plaintiff argues that following her EEOC charge, she experienced continued retaliatory animus on the part of the Defendant through continued denial of her ability to work on the docks, and through Defendant's selective implementation of its policies to the exclusion of Plaintiff. However, since the events that Plaintiff contends to be retaliatory animus began before she filed her EEOC charge and Plaintiff has not provided any evidence of additional or separate retaliatory

5

animus, the Court finds this objection to be meritless.[6]  Moreover, as correctly stated in the Report and Fourth Circuit precedence, the time between these events is too attenuated to establish causation.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report and Recommendation (DE 54) and incorporates it herein.

It is, therefore, **ORDERED** that Defendant's Motion for Summary Judgment (DE 49) is granted; and therefore, Plaintiff's Complaint is dismissed.

**IT IS SO ORDERED**.

                                                               Joseph Dawson, III
                                                               United States District Judge

Greenville, South Carolina
August 4, 2021

## NOTICE OF RIGHT TO APPEAL

Petitioner is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

[6] The Report only addresses conduct that occurred on or about May 26, 2016 in evaluating Plaintiff's Title VII claims.  (DE 54, p. 5, n 2.)